IN THE MATTER OF FRANK M. McDERMIT.

Argued March 12, 1921.—Decided June 7, 1921.

1. An attorney may have his name stricken off the roll for a sufficiently gross failure of duty to his client.
2. Where an attorney had been employed to defend a client in an indictment for murder, which resulted in conviction and sentence of death, and sued out a writ of error as a writ of right from the Court of Errors and Appeals, the return day of which was a week after the opening day of the next term of that court, it became

his duty under rule 27 of that court to apply on the opening of the term for such order as might be necessary to secure the speedy hearing and determination of the cause, and his failure to do so, which placed the life of his client in jeopardy, was a gross dereliction of duty, sufficient to cause his disbarment.

3. It was no excuse for the failure to perform his duty for the attorney to say that there was no money to pay the necessary expense of providing and printing a transcript as the statute authorizes the transcript to be printed at the public's expense.

On rule to show cause.

Before Justices SWAYZE, PARKER and BLACK.

For the rule, *Donald H. McLean.*

Opposed, *Harrison P. Lindabury.*

The opinion of the court was delivered by

SWAYZE, J. This is a rule against an attorney and counselor to show cause why his name should not be stricken off the rolls. Two charges were made, only one of which need be considered, that of lack of fidelity to his client in the case of State *v.* Lamble (alias Brandon).

The indictment was for murder. McDermit had been employed for the defence. There was a conviction and on October 4th a judgment of death. An application to the Chancellor for a writ of error out of the Supreme Court was refused. Thereupon McDermit sued out a writ of error as a writ of right from the Court of Errors and Appeals on November 9th, 1920, returnable November 29th, 1920. Between the issue of the writ of error and its return, the November term of the Court of Errors and Appeals opened on the 16th day of November. It thereupon became McDermit's duty, under the twenty-seventh rule of that court, there not being sufficient time to bring on the hearing at the November term, to apply to the Court of Errors and Appeals on the first day of that term for such order as might be necessary to secure the speedy hearing and determination of the cause. This he failed to do.

*96 N. J. L.* In re McDermit.

The prosecutor of the pleas thereupon gave notice to dismiss the writ of error. Regular practice required that it should be dismissed, but, as the case was a capital case, the Court of Errors and Appeals, out of mere grace, examined into the record and heard argument, directing that proceedings be had against the attorney for his neglect. The question now is whether he shall be convicted of failure in his duty and lack of fidelity to his client, and if so, what the punishment should be.

That an attorney may have his name stricken off the roll for a sufficiently gross failure of duty to his client cannot be doubted. The case of this very attorney many years ago holds "that the relation of counsel and client is one of the highest trust and confidence and the counsel is under a duty to observe the strictest integrity in his dealings with his client and a just regard for his interests." After the decision in that case this attorney was disbarred, but afterward was restored to the bar and now comes before us a second time. It is not the case of an inexperienced lawyer. It cannot be questioned that a failure, after having undertaken the case, to prosecute a writ of error for a client under sentence of death, is a gross dereliction in an attorney's duty. All that he had to do was to apply to the Court of Errors and Appeals on the first day of the term for an order to secure a speedy hearing and determination of the cause. When we consider how little had to be done, and how much depended upon its being done, we fail to think of any excuse that would be adequate. It is suggested that his client, or his client's wife, had contemplated employing other counsel. They had not in fact employed other counsel and had, after the talk to that effect, abandoned the idea. McDermit had received money and undertook to sue out the writ of error, and did so. His employment, if ever terminated, was renewed, and he became under renewed obligation on November 9th and so remained without suggestion to the contrary. By failing to do what the law required, he abandoned the case entirely without the knowledge of his clients, the life of one of whom was at stake. Having undertaken, at least as early as November 9th, to prosecute the writ of error,

he cannot be excused for having without the knowledge of his clients failed to take an essential step for the condemned prisoner's protection a week later, on the 16th. It is not pretended that the counsel expected or desired to sever the relations with his clients, and if he had so desired, it was his duty to apprise his clients in order that they might have opportunity to substitute other counsel. He says he thought the case was not in court until the return day of the writ. That is of no moment; it is just because the case could not be brought to hearing in ordinary course at November term that the rule required special application to the court; the language is too plain to be mistaken. The only other excuse suggested is that there was no money to pay the necessary expense for a transcript. This is met by the provisions of the statute authorizing the transcript to be printed at the public expense on a judge's order. No application was made for such an order until after the state's right to dismiss the writ of error had accrued. The most inexperienced practitioner would have laid the matter before the court with an assurance that the court would allow no litigant to suffer death merely for lack of money to obtain and print a transcript. In this case the counsel realized that the pecuniary difficulty would vanish upon the matter being laid before the court, as it did vanish afterward, and he now suggests by way of excuse for his failure to apply to the court that the wife of the prisoner was not willing to be an object of public aid. We find it difficult to believe this. She testifies that she told McDermit "for God's sake, do anything you can, I don't care what it is, only you save him." She wrote him in the same words on the day of her husband's sentence. It was McDermit who suggested to her that she did not want the transcript printed free. The only reason we can think of for his suggestion is not to his credit. She seems to have been anxious to do all she could to save her husband's life, and if the situation had been explained to her, we cannot believe that with her evident anxiety for her husband she would have refused the necessary assistance to enable him to have his case heard in an appellate court. We are persuaded that the real object of counsel was to drive his

clients to procuring more money to be paid to him, from their own resources, knowing that money advanced by the public for necessary expenses of the administration of justice would not be paid as counsel fees to counsel employed by the prisoner and his wife; his aim was to force the payment of money to himself by working on the fears of the prisoner and his wife. In the case already referred to (*In re Frank M. McDermit,* 63 *N. J. L.* 476), he was disbarred because he obtained money from his clients for which he failed to render any adequate service, and because he retained for his own use money which he received from them for another purpose. In short, he was then disbarred for lack of fidelity to his clients in pecuniary matters only. He is now guilty of lack of fidelity in a matter involving life. He abandoned them when the prisoner was in the very shadows of the electric chair, in the very week fixed for execution. That abandonment was not less culpable because he subsequently resumed his efforts in their behalf under strong pressure from the court. For counsel to abandon a client at such a crisis is like a soldier deserting in the face of the enemy. Dereliction on the part of attorneys and counselors is not uncommon, but, fortunately, the most untrustworthy counsel is ordinarily loyal enough to his client, and even the ordinary sense of self-interest urges a lawyer to do the best he can to save his client's life. It is rare that counsel sets his own desire for money above his client's chance of life. We find that McDermit was guilty of gross dereliction in his duty to his client. We can think of none grosser. If mere unfaithfulness in money matters justified his disbarment in 1899, much more must lack of fidelity in a matter of life and death justify his disbarment in 1921.

Let the name of Frank M. McDermit be stricken off the roll of attorneys and the roll of counselors.